**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Conservator for Columbus Savings & Loan Association, Plaintiff,**

v.

**Ted A. MUSACCHIO, Eric J. Noda, Robert W. Kenney, Herbert Worden, Trade Wind Traders, Inc., TW Trading International, TWT Financial Group, Charlotte E. Noda, C.E. Capital, and Patricia K. Henry, Defendants.**

**No. C–86–6641 RFP.**

United States District Court, N.D. California.

April 22, 1988.

See also 695 F.Supp. 1053.

Stephen E. Taylor, David F. Gross, Mark C. Dosker, Graham & James, San Francisco, Cal., for plaintiff FSLIC.

William E. Bennett, San Jose, Cal., C. Judith Johnson, Burlingame, Cal., for defendants Trade Wind Traders, Inc. and Patricia Henry.

Lee Ann Huntington, Morgenstein & Jubelirer, San Francisco, Cal., Michael I. Spiegel, Spiegel, Cutler, Liao & Kagay, San Francisco, Cal., for defendant Ted A. Musacchio.

Philip E. Bass, Titchell, Maltzman, Mark, Bass, Ohler & Mishel, San Francisco, Cal., for defendant Herbert Worden.

Jeremiah F. Hallisey, Hallisey & Johnson, San Francisco, Cal., for defendant Robert W. Kenney.

John A. Koeppel, Lisa Lorea, Ropers, Majeski, Kohn, Wagner & Kane, San Francisco, Cal., Barry D. Hovis, Adams, Sadler & Hovis, San Francisco, Cal., for defendants Joseph Garbarino, et al.

John Enscoe, Red C. Radosevich, Landels, Ripley & Diamond, San Francisco, Cal., for defendant Frederick A. Fuchs.

Neil Bloomfield, Law Offices of Neil Bloomfield, Fairfax, Cal., for defendant Charlotte Noda.

Eric J. Noda, Novato, Cal., in pro. per.

MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS TRADE WIND TRADERS, INC. TW TRADING INTERNATIONAL AND TWT FINANCIAL GROUP ON THIRTEENTH AND FOURTEENTH CLAIMS FOR RELIEF

PECKHAM, Chief Judge.

## INTRODUCTION

The Federal Savings and Loan Insurance Corporation ("FSLIC"), as Conservator for Columbus Savings and Loan Association ("Columbus"), seeks summary judgment on the FSLIC's thirteenth (breach of contract) and fourteenth (money lent) claims for relief against defendants Trade Wind Traders, Inc. ("TWT"), TW Trading International ("TWTI") and TWT Financial Group ("TWTFG"), hereafter collectively referred to as the "TWT Group". Both of these claims arise out of a series of loans extended to the TWT Group by Columbus for a total principal sum of $2.89 million. The TWT Group has raised 11 defenses to FSLIC's claims, all of which depend on a side agreement between the TWT Group's officers and former Columbus officer Eric J. Noda, another defendant in this action.

## BACKGROUND

The following facts are undisputed:

In 1984, Eric J. Noda became an officer at Columbus. Noda is the former husband of the president of the TWT Group, defendant Patricia K. Henry. Shortly thereafter, Columbus extended several loans to members of the TWT Group, aggregating to a total of $2.89 million. TWT, TWTI and TWTFG executed the following written promissory notes for money they borrowed:

| Date | Borrower | Principal Amount |
|---|---|---|
| February 21, 1985 | TWT | $ 250,000 |
| April 4, 1985 | TWTI | 500,000 |
| April 11, 1985 | TWTFG | 1,800,000 |
| May 3, 1985 | TWT | 340,000 |
| TOTAL | | $2,890,000 |

These promissory notes are more fully described as follows:

TWT executed a promissory note on February 21, 1985 for the principal sum of $250,000, whereby TWT acknowledged that it was obligated to pay Columbus this sum, together with interest at 2% above Bank of America's prime rate (the "February 21 Note"). The February 21 Note obligated TWT to make interest payments on a monthly basis until February 21, 1987, and then monthly principal payments of $4,166.67 plus interest until March 21, 1992, at which time all unpaid principal and interest would be due.

TWTI executed a promissory note on April 4, 1985 for the principal sum of $500,-000, whereby TWTI acknowledged that it was obligated to pay Columbus this sum, together with interest at the rate of the 11th District cost of funds plus 2%, with a cap of 13% (the "April 4 Note"). The April 4 Note required TWTI to pay interest annually for three years, beginning April 4, 1986, and thereafter to make quarterly payments of principal and interest until April 4, 2003, at which time TWTI would be obligated to pay all outstanding principal and interest.

TWTFG executed a promissory note on April 11, 1985 for the principal sum of $1,800,000, whereby TWTFG acknowledged that it was obligated to pay Columbus this sum, together with interest at the rate of the 11th District cost of funds plus 2%, with a cap of 14% (the "April 11 Note"). TWTFG was obligated to pay interest annually for three years, beginning April 11, 1986, and thereafter to make quarterly payments of principal and interest (with a cap of 13%) until April 11, 2008, at which time TWTFG would be obligated to pay all outstanding principal and interest.

With respect to this $1,800,000 loan, Henry states via declaration that at the time she had thought TWTFG was applying for a $500,000 loan. She was "shocked" when a check in the amount of $1,800,000 was presented to her. Henry Declaration at 3. According to Henry, Noda arranged the larger loan because he needed $1,300,000 "for some projects of his own." *Id.* Under the terms of their side agreement, TWTFG brokered the $1,300,000 back to Noda. Although the $1,300,000 was ostensibly brokered to C.E. Capital, this entity was under Noda's control, and in fact the money went to Noda. Henry states that no one with the TWT Group made any effort to hide this transaction and the loan to Noda was openly kept on TWTFG's books. *Id.* at 4. Noda eventually repaid approximately $640,000 of this loan to

TWTFG, thus reducing the outstanding debt to approximately $660,000. No portion of any such repayment from Noda to the TWT Group was ever returned to Columbus pursuant to TWTFG's obligation to repay its $1,800,000 loan.

TWT executed a promissory note on May 3, 1985, for the principal sum of $340,000, whereby TWT acknowledged that it was obligated to pay Columbus this sum, together with interest at the rate of the 11th District cost of funds plus 2%, with a 13% cap, payable interest only annually for three years beginning May 3, 1986, and then beginning on May 3, 1988 and continuing thereafter at the same rate without a cap, principal payments of $4,047.62 plus interest until May 3, 1996, at which time TWT would be obligated to pay all outstanding principal and interest.

By May 23, 1985, Columbus had disbursed the entire $2.89 million to the TWT Group. The four promissory notes that are the subject of this motion are the product of a series of earlier loans and disbursements pursuant thereto that had been rolled over by defendant Noda and consolidated into the loans memorialized by the four notes. Henry states via affidavit that Columbus relied upon falsely inflated TWT Group financial statements—forged by Noda without the knowledge or consent of the TWT Group's officers—when it approved these loans.

Each of the four notes is in default for nonpayment of the amounts due.[1] TWT defaulted on the February 21 Note by failing to make the interest payments due, and defaulted on the May 3 Note by failing to make its first payment on that loan, due on May 3, 1986. Likewise, TWTI defaulted on the April 4 note by failing to make the first payment, due April 4, 1986. Finally, TWTFG also defaulted on the April 11 Note by failing to make the first payment, due on April 13, 1986. Each note contains the following default provision:

---

**1.** In its answer, the TWT Group denied that the loans were in default. *See* Answer at ¶ 4. This contention is unsupported by affidavit evidence, however. Indeed, the TWT's Group's Opposition to FSLIC's Motion for Summary Judgment

acknowledges that FSLIC's recitation of the facts is essentially accurate. Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 2.

If Borrower does not pay as agreed, or if Borrower or any guarantor of this note breaches any other agreement with the Bank, Borrower will be in default. Upon default, or if Bank reasonably deems itself insecure, Lender may declare the entire unpaid principal balance and accrued interest immediately due, without notice, and Borrower will then pay that amount.

Exhibits A, B, C and D to Lohr Declaration. These notes contain a further provision whereby the borrower expressly agreed to pay the attorneys' fees and expenses incurred in connection with collecting the amounts owed under the notes. *Id.*

On April 14, 1987, the Federal Home Loan Bank Board ("FHLBB"), based upon its determination that Columbus was insolvent, appointed the FSLIC as the Conservator for Columbus pursuant to federal law. 12 U.S.C. §§ 1729(c)(1)(B), 1464(d)(6)(A). As such, FSLIC succeeded to all the rights, powers, privileges and immunities of Columbus and its directors. 12 U.S.C. §§ 1464(d)(6)(D), 1729(b), 1729(c)(1)(B)(i)(II); 12 C.F.R. §§ 547-48.

FSLIC thereafter demanded payment of the amounts due under the notes. On June 12, 1986, the FSLIC wrote to each member of the TWT Group, notifying them that they were in default under the notes and that pursuant to the terms of the notes, Columbus demanded repayment of all principal and interest due on or before June 30, 1986. The TWT Group has not responded to this demand.

On November 28, 1986, FSLIC commenced this action against former Columbus officers, defendants TWT, TWTI and TWTFG, and director of the TWT Group Patricia K. Henry. On January 21, 1987, the TWT Group and Henry filed an Answer and included a cross-claim against their co-defendants. The TWT Group, Henry and the TWT Group's chief financial officer Kay Brown subsequently filed an additional action against FSLIC asserting claims substantially identical to those asserted in their cross-claim. *Trade Wind Traders, Inc., et al. v. FSLIC, et al.,* No. C-88-0110

TEH (N.D.Cal.). This case has since been related to the above action and reassigned to these chambers.

On January 12, 1987, a criminal complaint was filed against Eric J. Noda. The criminal complaint charged Noda with fraudulently obtaining $1,300,000 from Columbus in connection with the April 11 Note with TWTFG. On March 26, 1987, Noda plead guilty to the federal crime of improper receipt of money for a loan transaction by a federally insured institution, 18 U.S.C. § 215. *United States v. Eric J. Noda,* No. CR-87-0058 JPV (N.D.Cal.).

As of May 31, 1987, the TWT Group's business records reflect aggregate indebtedness to Columbus in the principal amount of $2,897,283.26.[2] Exhibits C and D to Dosker Declaration. As reflected in the TWT Group's books, the total amount due Columbus on the loans at issue here, including both principal and interest as of May 31, 1987, totaled $3,437,314.95. *Id.*

## DISCUSSION

Summary judgment serves as a means of avoiding trial where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bloom v. General Truck Drivers, Office, Food & Warehouse Union, Local 952,* 783 F.2d 1356, 1358 (9th Cir.1986). To defeat such a motion, the non-movant must show that there exist "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party."* *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)) (emphasis in original), *cert. denied,* — U.S. —, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial'* " with respect to a material fact. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct.

---

**2.** This total includes a loan for $7,283.26 which is not at issue here.

1348, 1356, 89 L.Ed.2d 538, 552 (1986) (quoting rule 56) (emphasis in original). The non-movant cannot merely rest on allegations in its pleadings. Rather, it must set forth specific material facts via affidavit or otherwise to defeat the motion. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983).

### 1. Breach of Contract Claim

■ The FSLIC's thirteenth claim for relief sets forth a breach of contract claim. Under California law, in order to prevail on its breach of contract claim, FSLIC must plead and establish: "(1) the contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damage to plaintiff." *Lortz v. Connell*, 273 Cal. App.2d 286, 290, 78 Cal.Rptr. 6 (1st Dist. 1969). *See also Reichert v. General Ins. Co. of Am.*, 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968).

Here, the existence of the contracts in the form of the promissory notes is admitted. Complaint ¶ 80; Answer ¶ 18. Columbus fully performed its obligation under the notes: it loaned the TWT Group the money. Complaint ¶ 80; Answer ¶ 4. The TWT Group breached its corresponding duty when it failed to make the payments set forth in the notes. Lohr Declaration at ¶ 6. The damage to Columbus is manifest: it is now out $2.89 million. The notes conclusively establish the TWT Group's liability.

### 2. Claim for Money Lent

■ The FSLIC's fourteenth claim for relief is for money lent. California law provides that, in order to survive a general demurrer, a claim for money lent must set forth the date, the parties to and the execution and terms of the note, state that the plaintiff has title to the note, and state that the defendant is in default. *Ward v. Clay*, 82 Cal. 502, 505, 23 P. 50 (1890). *See also Lincoln County Bank v. Fetterman*, 170

Cal. 357, 359–60, 149 P. 811 (1915). As noted above, the notes at issue here contain an acceleration clause in event of default. The filing of a lawsuit is itself sufficient to show exercise of an acceleration clause. *Title Guarantee & Trust Co. v. Fraternal Finance Co.*, 220 Cal. 362, 364, 30 P.2d 515 (1934).

Here again, the terms and execution of the notes are acknowledged by all. Complaint ¶ 80; Answer ¶ 4. TWT admits that FSLIC demanded payment on the notes. Complaint ¶¶ 185, 188; Answer ¶¶ 19, 21. The exact amount owed on the notes is undisputed. FSLIC clearly holds title to the notes. *See supra.* Finally, the TWT Group admits that it has not repaid interest and principal as required by the notes. Lohr Declaration at ¶ 6.

### 3. TWT Group's Defenses

The TWT Group's answer raises a laundry list of 11 defenses.[3] These defenses are simply itemized without amplification; there is no indication of the factual basis for each. In moving for summary judgment, the FSLIC maintains that each and every defense is legally or factually unsupportable.

#### a. Operation of the D'Oench Doctrine

■ Because the TWT Group's answer does not indicate the basis for its defenses, it is difficult to determine which of the defenses could be barred by virtue of the so-called *D'Oench* doctrine first set forth by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, *reh'g denied*, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942). The *D'Oench* rule holds that a federal agency may rely on and enforce the written terms of an obligation owed to a failed financial institution notwithstanding an attempt by the debtor to preclude liability by asserting an agreement outside the note. The FSLIC argues that all of the TWT Group's defenses depend upon the secret side agreement

---

**3.** The defenses alleged in the TWT Group's answer are: (1) failure to state a cause of action; (2) the statute of limitations; (3) estoppel; (4) laches; (5) improper failure to re-negotiate the loans; (6) fraud; (7) undue influence; (8) unconscionability; (9) contract of adhesion; (10) public policy; and (11) mitigation of damages.

with Noda described above, and the TWT Group does not challenge this assertion. The FSLIC thus argues that the *D'Oench* doctrine bars *all* of the TWT Group's defenses.

Despite the FSLIC's argument, several of the defenses having nothing to do with the side agreement with Noda. For example, the TWT Group asserts that the claim is barred by operation of the statute of limitations. Whatever the merits of this defense, the side agreement is irrelevant to its success or failure. Nonetheless, the *D'Oench* rule would seem to reach several of the TWT Group's defenses (e.g. fraud, laches, undue influence). Accordingly, a discussion of the scope of the *D'Oench* rule is warranted.

The holding of the *D'Oench* case is summarized in the Ninth Circuit case of *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974):

> [*D'Oench*] involved a note, regular on its face, executed by the defendant, an accommodation maker. The note was given to the bank to conceal certain irregularities from the bank examiners, and at the time the note was executed the bank agreed that the note would not be collected and that all interest payments made would be repaid. After the bank closed, FDIC acquired its assets and sued to collect on the note. At trial, the maker contended that the note was given without consideration, and that the secret agreement by the bank was enforceable against FDIC. Noting that federal policy protects FDIC and the public funds which it administers against misrepresentations as to bank assets, the Supreme Court held that the accommodation maker was estopped from asserting either of these defenses.

*Meo*, 505 F.2d at 791–92 (citing *D'Oench*, 315 U.S. at 461, 62 S.Ct. at 681) (footnote omitted). The *D'Oench* court reasoned:

> Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners.... [T]he inability of an accommodation maker to plead the defense of no

consideration does not depend on his commission of a penal offense. The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker *lent himself* to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

*D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680–81 (emphasis added).

There has been some disagreement within the Ninth Circuit over whether the *D'Oench* rule reaches an innocent debtor. In *Meo*, *supra*, it held that *D'Oench* was inapplicable under the facts of that case. There, the maker exchanged a note for 1,000 shares of bank stock, which were to be held as security for the note. Instead of issuing the stock, the bank issued and held 1,000 voting trust certificates. There was no secret agreement whereby the assets would be overstated, and the maker was wholly unaware of the bank's actions. Given that the maker was "innocent of any wrongdoing or negligence," 505 F.2d at 793, the court held that *D'Oench* did not estop the borrower from asserting his failure of consideration defense. *Id.*

The instant case is easily distinguished from *Meo*. Here, Henry admits that she knew of Noda's scheme. Although she did not investigate the fraud and expressed considerable reservations about its legality, she certainly "lent herself" to Noda's improprieties, to borrow language directly from *D'Oench*. Unlike the defendant in *Meo*, Henry was not wholly innocent. Moreover, in *Meo* there was a failure of consideration in that the maker did not receive what he had bargained for: 1,000 shares of the bank's common stock. Here, the TWT Group received exactly what the notes called for: $2.89 million.

The Ninth Circuit case of *FDIC v. First Nat'l Finance Co.*, 587 F.2d 1009 (9th Cir. 1978), is more nearly on point. In *First Nat'l Finance*, the FDIC sued on the notes in its capacity as receiver for a failed bank. The appellants asserted that these were

purely accommodation notes. Pursuant to a collateral agreement, the loan proceeds were transferred to a third entity under control of the failed bank's former chief administrative officer. Under the terms of this alleged collateral agreement, the appellants would never have to pay on the notes. The Ninth Circuit affirmed the district court's grant of summary judgment, holding that "the appellants are estopped, as a matter of law, from asserting the defense of a secret agreement not to enforce the promissory note." *Id.* at 1011.

■ The parallels between *First Nat'l Finance* and this case are obvious. In both cases the side agreement caused the bank to overstate its assets—precisely the threat that moved the Supreme Court to rule as it did in *D'Oench.* In addition, neither defendant could claim that it was wholly ignorant of the fraudulent scheme. The TWT Group's contention that *D'Oench* requires the borrower to intend to participate in the fraud goes too far. The borrower need only "lend himself" to the scheme. *Accord, FDIC v. McClanahan,* 795 F.2d 512, 516–17 (5th Cir.1986); *FDIC v. Langley,* 792 F.2d 541, 544–46 (5th Cir. 1986), *aff'd,* — U.S. —, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *FDIC v. Investors Associates X., Ltd.,* 775 F.2d 152, 154–56 (6th Cir.1985) (*"D'Oench* estops the maker of a note from asserting *any* defense arising out of the fraudulent scheme, including representations made by another participant in the scheme.") (emphasis added); *Dill v. FSLIC,* 678 F.Supp. 1404, 1406 (E.D. Ark.1988) ("[i]ntent to deceive is not required for application of the [*D'Oench*] rule"); *cf. FDIC v. Bank of San Francisco,* 817 F.2d 1395, 1398–99 (9th Cir.1987) (*D'Oench* doctrine applies to estop issuer of letter of credit from asserting fraud defense).[4]

Each of the cases cited above involved suits brought by the FDIC on behalf of a failed financial institution. In suits

brought by the FDIC, the *D'Oench* rule has been codified at 12 U.S.C. § 1823(e). Obviously, this case is brought by the FSLIC. By its terms, 12 U.S.C. § 1823(e) does not apply. Numerous courts have held, however, that for purposes of applying the *D'Oench* rule no distinction should be drawn between the FDIC and the FSLIC. *See, e.g., FSLIC v. Dillon Const. Co.,* 681 F.Supp. 1359, 1361 (E.D.Ark.1988); *Dill, supra,; FSLIC v. Lefeve,* 676 F.Supp. 764, 767 (S.D.Miss.1987); *FSLIC v. Hickey,* No. 86–3091, at 4 (E.D.La. September 17, 1987) [available on WESTLAW, 1987 WL 17329]; *FSLIC v. Hsi,* 657 F.Supp. 1333, 1338 (E.D.La.1986); *cf. Bailey v. Metro Fed. Sav. & Loan Ass'n of Lake Charles,* 642 F.Supp. 616, 622 n. 5 (W.D.La.1986). As far as can be determined, no courts have held that *D'Oench* ought not to apply to FSLIC simply because 12 U.S.C. § 1823(e) only refers to the FDIC. There is thus no question that *D'Oench* estops the TWT Group from asserting any defenses that rely upon the agreement with Noda.

**b. TWT's affirmative defenses**

TWT's answer raises 11 affirmative defenses. Some clearly rely upon the existence of the side agreement with Noda, and are therefore estopped. Others may not rely upon the existence of the side agreement and thus may not be estopped, but are meritless. Each defense is considered in turn.

*i. Failure to state a claim*

The TWT Group's first affirmative defense alleges that FSLIC has failed to state a claim for which relief can be granted. The TWT Group can only assert this claim if FSLIC's complaint is legally insufficient. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974). As previously noted, *see supra* §§ 1 and 2, the FSLIC's thirteenth and fourteenth claims for relief are legally sufficient un-

---

**4.** Counsel for the TWT Group draws the court's attention to *Savings Bank of Rockland County v. FDIC,* 668 F.Supp. 799 (S.D.N.Y.1987), in which the court declined to extend *D'Oench* to reach a case not involving an active misrepresentation by means of a secret agreement not reflected on

the defaulting bank's books. Unlike the instant case, however, the misrepresentation in *Rockland County* did not operate to diminish the real assets of the financial institution. 668 F.Supp. at 811.

der California law. This defense is meritless.

### ii. Statute of limitations

■ The TWT Group's second affirmative defense asserts that FSLIC's claim is barred by the applicable statute of limitations. Federal law provides that actions founded upon contract brought by the United States or an agency thereof are subject to a six year statute of limitations. 28 U.S.C. § 2415(a). The corresponding state statute of limitations is four years. California Code of Civil Procedure § 337. The first note at issue in this action was executed in February, 1985. FSLIC filed this action in November, 1986. Even under the shorter, state statute, FSLIC's claim is timely.

### iii. Estoppel

The TWT Group's third defense, estoppel, is barred by operation of the *D'Oench* doctrine. If anything, the TWT Group is estopped from raising its defense. Arguing that FSLIC is estopped turns the *D'Oench* doctrine on its head.

### iv. Laches

■ Under California law, the TWT Group's fourth affirmative defense, laches, is a defense only to an action in equity, and may not be asserted in an action at law. *See Northridge Hosp. Found. v. Pic 'n' Save No. 9, Inc.*, 187 Cal.App.3d 1088, 1101, 232 Cal.Rptr. 329, 337 (2d Dist.1986). The defense is thus inapplicable to the current action. Moreover, even if the doctrine of laches applied to an action at law, it only bars the action where the delay is unreasonable and there either has been an acquiescence in the act about which the plaintiff complaints or prejudice to the defendant as the result of the delay. *Miller v. Eisenhower Medical Center*, 27 Cal.3d 614, 166 Cal.Rptr. 826, 832, 614 P.2d 258 (1980); *Northridge Hosp. Found., supra*, 187 Cal. App.3d at 1101, 232 Cal.Rptr. at 337. The TWT Group has shown neither acquiescence nor prejudice.

### v. Failure to renegotiate loans

■ The TWT Group's fifth affirmative defense arises from its assertion that commercial banking loans are ordinarily renegotiated and that FSLIC breached its duty to the TWT Group in failing to renegotiate here. Nothing in the promissory notes obliged FSLIC or Columbus to renegotiate the loans. Indeed, the notes specifically provide for enforcement upon default. FSLIC is entitled to enforce the notes as written. *FSLIC v. Hsi*, 657 F.Supp. 1333 (E.D.La.1986). The TWT Group provides no legal basis for departing from this principal, nor does it make any showing of discrimination.

### vi. Fraud

The TWT Group's sixth affirmative defense, fraud, is barred under the *D'Oench* doctrine. *See supra* § 3(a).

### vii. Undue influence

The TWT Group's seventh affirmative defense is "undue influence." Presumably, the undue influence this refers to is the influence Noda exerted over Henry. The TWT Group provides no hint as to what else might constitute its basis for this defense, and the court cannot envision another. Because the defense derives from the existence of the side agreement, it is barred by virtue of the *D'Oench* doctrine. Even if the defense were available, Henry's declaration simply states that she relied upon Noda's supposed expertise when she committed the TWT Group to the loans. This falls far short of the showing necessary to establish undue influence.

### viii. Unconscionability

■ Although the TWT Group's eighth affirmative defense requires some amplification, presumably it asserts that the terms of the notes are unconscionable. This assertion has no basis in fact. Moreover, there is nothing unconscionable about exercising the contractual right to demand repayment upon default.

### ix. Contract of adhesion

■ The TWT Group's ninth affirmative defense is that the promissory notes constitute "contracts of adhesion." This defense is unsupported by any that it executed the notes involuntarily. In addition, California courts hold that as a matter of law standardized promissory note forms into which the interest rate and other agreed upon terms are inserted (such as the notes at issue here) are not unenforceable contracts of adhesion. *Powell v. Central Cal.Fed. Sav. & Loan Ass'n,* 59 Cal.App.3d 540, 550–51, 130 Cal.Rptr. 635, 641 (3d Dist. 1976). Accordingly, the defense has no merit.

### x. Public policy

The TWT Group's tenth affirmative defense asserts that holding it liable for these notes is contrary to public policy. There is nothing threatening, however, in permitting a holder to sue under the terms of the note.

### xi. Mitigation of damages

■ The TWT Group's eleventh and final affirmative defense is that FSLIC had a duty to mitigate its damages. It is unclear, however, just how FSLIC might have done this. More fundamentally, the Ninth Circuit in *First Nat'l Finance* held that under the *D'Oench* doctrine the FDIC need not show it relied on the appellants' conduct and was injured thereby in order to estop the appellants' from asserting their affirmative defense. If a banking agency need not show injury, surely there is no need to show that it mitigated its damages.

To summarize, the TWT Group's affirmative defenses are either barred by *D'Oench* or have no basis in law or fact.

### CONCLUSION

The purpose of summary judgment is to avoid trial where, as here, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bloom, supra,* 783 F.2d at 1358. "Typically, suits on promissory notes provide fit grist for the summary judgment mill." *FDIC v. Cardinal Oil Well Servicing Co., Inc.,* 837 F.2d 1369, 1371 (5th Cir.1988) (affirming summary judgment partly in reliance on *D'Oench* doctrine). This is one such suit. FSLIC has provided sufficient factual grounds to establish claims for relief for breach of contract and money lent. The TWT Group's affirmative defenses are barred to the extent that they rely upon the side agreement with Noda. In addition, the TWT Group has provided no factual or legal support for those defenses that may exist apart from the side agreement. FSLIC's motion for summary judgment is therefore granted.

IT IS SO ORDERED.